### ELLIOTT v. GUARDIAN TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

RAILROADS (§ 169*)—FISCAL MANAGEMENT—BONDS—CHANGE OF MORTGAGE—TRUSTEE'S LIABILITY.

A Mexican railroad company offered bonds for subscription under an agreement that the bonds were to be secured by a mortgage on a railroad to be constructed between certain specified points in Mexico. The subscriptions were to be paid in installments, which were to be paid to the railroad company at the office of defendant trust company, which was named as trustee under the mortgage. As each payment was made the trustee was to deliver a receipt exchangeable for bonds, when engraved and issued. *Held*, that payments of the subscription moneys to the railroad company by the trustee having been made in accordance with the subscription agreement, and not in violation of any duty assumed by it, subscribers, on the failure of the enterprise, could not recover from the trustee the amounts paid by them, though mortgages as afterwards executed contained provisions requiring proof of the construction of the railroad before paying over the proceeds of the bonds.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

Appeal from Judgment on Report of Referee.

Action by Samuel Elliott, on behalf of himself, etc., against the Guardian Trust Company of New York. From a judgment for plaintiff on report of referee, defendant appeals. Reversed, with directions to dismiss.

See, also, 132 App. Div. 908, 116 N. Y. Supp. 1135.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Henry D. Hotchkiss, for appellant.
Henry L. Sprague, for respondent.

MILLER, J.   This is a suit by the plaintiff, one of the bondholders of the La Dicha & Pacific Railroad Company, in behalf of himself and of all others having like interest, to compel the defendant, the trustee named in the mortgage, to account for the moneys received upon the subscriptions for the said bonds.   The interlocutory judgment directs an accounting as prayed for in the complaint.   The complaint asks that the defendant account for the moneys of the plaintiff and others received by it and paid over to the said railroad company.   The appellant challenges the judgment as not supported by the findings.

In order to present the point involved, it is necessary to set forth somewhat at length the facts as found by the referee.   The La Dicha & Pacific Railroad Company was a corporation of the state of Maine, having a concession from the Mexican government to build a railroad from the port of Marques, in the state of Guerrero, to La Dicha, where the mines and works of the La Dicha Mining & Smelting Company, a Mexico corporation, were located.   The Mitchell Mining Company, an Arizona corporation, owned all of the stock of the La Dicha Mining & Smelting Company, except enough to qualify directors, and a majority of the stock of the La Dicha & Pacific Railroad Company, which was evidently organized to construct and operate a railroad in aid of the mining and smelting undertaking.   For the purpose of doing that, in July, 1906, the railroad company offered for subscription $1,000,000 of an authorized issue of $1,500,000 of bonds.   The subscription agreement provided that the bonds were to be secured by a mortgage on "a railroad approximately 80 miles long to be constructed from the Pacific Coast, state of Guerrero, Mexico, to the mines and works of the La Dicha Mining & Smelting Company, at La Dicha, state of Guerrero, Mexico."   They were to be guaranteed by the La Dicha Mining & Smelting Company, and were to be convertible within three years for the stock of the Mitchell Mining Company on the basis of 150 per cent. of their par value.   They were to be subscribed for at 80 per cent. of their par value, the subscriptions to be paid in installments, 10 per cent. upon 10 days' notice from the company after the subscription agreement was accepted, and the balance in 5 payments, 30, 60, 90, 120, and 150 days respectively, thereafter.   The agreement further provided "that all said payments shall be paid to the La Dicha & Pacific Railroad Company at the office of the trust company which shall be named as trustee under the mortgage securing such bonds," and at the time of each payment the trustee was to deliver a receipt or certificate therefor.   On November 14, 1906, the plaintiff subscribed for some of the shares of the said Mitchell Mining Company and for $10,000 of the bonds of the La Dicha & Pacific Railroad Company.   Prior to that time, the defendant had been selected, and had consented to act as trustee, and all the subscription agreements were deposited with it.   The plaintiff made his payments

as follows: November 27, 1906, $800; December 27, 1906, $1,440; January 16, 1907, $1,760; February 27, 1907, $1,500; March 28, 1907, $1,060. The defendant gave a receipt for each payment, which provided that it was received in part payment of subscription for La Dicha & Pacific Railroad Company gold bonds "in accordance with the subscription agreement of the said company," and that the bonds were to be delivered when the full purchase price was paid and when the bonds were engraved and issued. When final payment was made, another like receipt was given, which provided that bonds were to be delivered by defendant upon surrender of the subscription agreements and receipts, "when the said bonds shall have been engraved and issued." Four hundred ninety seven thousand, eight hundred sixty dollars and ninety cents was received by the defendant on subscriptions for bonds and was credited to the La Dicha & Pacific Railroad Company, and paid out to, or on the order of, the said railroad company at various times between October 22, 1906, and October 22, 1907. On February 27, 1907, an instrument in form a mortgage covering the franchises and property of the said railroad company to secure said $1,500,000 of bonds was executed and acknowledged by the railroad company and by the defendant, and was sent to the attorney of the railroad company in Mexico to be executed by the secretary of the Mining & Smelting Company, as was necessary, and then to be translated and registered. While still in the hands of said attorney it was recalled by the president of the railroad company pursuant to a resolution of its directors, and a new mortgage was executed by the railroad company, the mining and smelting company, and the defendant on June 4, 1907, and that mortgage was sent to Mexico and recorded on August 12, 1907. On September 3, 1907, a resolution of the directors of the railroad company was adopted according to the terms of the mortgage of June 4th, authorizing the defendant to certify and deliver to subscribers named, including the plaintiff, $348,600 of bonds and thereafter, upon the certificate of the president and the chief engineer of the railroad company, to the effect that $348,600 of bonds had been sold, and that the proceeds were being used solely for the construction of said railroad, and were necessary and required for the purchase of materials or to pay for labor expended or to be expended in the construction of said railroad, the defendant certified and delivered to the subscribers, pursuant to the authority contained in the mortgage of June 4, 1907, the said amount of bonds. The plaintiff accepted his bonds on November 27, 1907. At that time he knew that the railroad company was insolvent, and that the construction work was suspended on August 7, 1907, and not resumed.

It is unnecessary to analyze for the purpose of comparison the two instruments of February 27, 1907, and of June 4, 1907, as the parties substantially agree upon their construction. According to the instrument of February 27, 1907, the trustee could certify bonds at the rate of $15,000 per kilometer of constructed railroad upon proof of such construction, or, if the bonds were issued in advance of construction, the proceeds were to be held by it and paid over to the railroad company only upon like proof. According to the instrument of

June 4, 1907, the trustee could certify bonds and pay over the proceeds upon proof that they were "necessary and required for the purchase of materials or to pay for labor or services expended or to be expended in the construction of said line of railroad," and the written statement of the president of the railroad company accompanied by the verified certificate of the Chief Engineer was to be sufficient proof and full authority and protection to the trustee. Both instruments provided that they should not be in full force until legally recorded in the republic of Mexico.

No bonds were ever issued under the instrument of February 27, 1907. The plaintiff never saw, and had no knowledge of, the provisions of said instrument, and he and the other subscribers understood that the moneys paid by them were to be used as needed in the construction of the railroad.

This appears to be an effort by speculative investors in a Mexican mining enterprise to recover their losses from a trustee named in a mortgage executed to secure an issue of bonds. The defendant paid over the plaintiff's money to the railroad company precisely as he expected it would, and he has received and accepted precisely what he expected to receive. His disappointment results from the failure of the enterprise in which he embarked. Nevertheless he contends that the defendant was guilty of a breach of trust in paying over the subscription moneys before the mortgage was executed, and that when the instrument of February 27, 1907, was signed and acknowledged by the railroad company and by the defendant, it fixed the plaintiff's rights as a bondholder and determined the defendant's duties to him as trustee. As a matter of fact, practically all of the subscription moneys had been paid out or pledged as security for credit extended to the railroad company prior to February 27, 1907. The referee having found that the plaintiff knew that his moneys were to be used as needed by the railroad company, it is unnecessary to analyze the evidence conclusively showing that that was the fact. According to the subscription agreement, those moneys were paid to the railroad company at the office of the defendant, and the latter had no power, if it would, to withhold them from the railroad company. It received those moneys as agent for the railroad company, and the only obligation to subscribers assumed by it, upon issuing receipts, was to certify and deliver bonds, when they should be engraved and issued. That obligation has been performed, and the plaintiff has accepted performance.

As the payment of the subscription moneys to the railroad company was in accordance with the subscription agreement, and not in violation of any duty assumed by the defendant, the plaintiff cannot take advantage of the provisions of a partly executed instrument, under which nothing was ever done and of which he had no knowledge. Even if the instrument of February 27, 1907, had been fully executed, delivered, and recorded, and though the plaintiff's bonds had been issued pursuant to it, he would not be in a position to claim the benefit of the provision respecting the certification of bonds or the payment of the proceeds to the railroad company. Selden v. Burke, 147 N. Y. 547, 42 N. E. 261. That was a suit against the

directors of the mortgagor, the trustee being a nominal defendant, and it was held that a purchaser of the bonds, with full knowledge of how the proceeds had been used, could not maintain an action for the breach of a covenant in the mortgage to devote the bonds or their proceeds to a particular use. The instrument of February 27, 1907, never became effective, and the parties to it, upon discovering that it was not in accordance with the subscription agreement, had the right to substitute a proper mortgage. Even if bonds had actually been issued pursuant to it, the said parties would at least have been entitled to the aid of a court of equity to reform it, unless the rights of bona fide purchasers upon the faith of it had intervened.

The plaintiff's rights must be determined, either by the subscription agreement or by the mortgage, under which the bonds were issued to and accepted by him. Under the subscription agreement the defendant assumed no duty or obligation to him, except to certify and deliver bonds when they were engraved and issued. His bonds were issued, and certified by the defendant, in literal compliance with the mortgage of June 4, 1907, and he accepted them with full knowledge that the railroad company was insolvent, that the work on the railroad had been abandoned, and that his money had been wasted. The defendant is under no legal or moral duty to reimburse him.

The interlocutory judgment should be reversed, with costs, and judgment directed upon the findings for the defendant dismissing the complaint, with costs. All concur.